IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BONNIE FITZPATRICK,

       Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　　　CIV 05-879 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.

# **MEMORANDUM OPINION AND ORDER**

      Plaintiff Bonnie Fitzpatrick began working as a truck driver in 1984, when she was in her early thirties. She quit working in March 2003 at the age of fifty-one. She asserted in her Social Security application materials that she became disabled on April 1, 2003 due to a back injury, emphysema, and bladder control problems. However, Fitzpatrick told the consulting examining physician that she quit working due to financial problems. *See, e.g., Administrative Record* ("*Record*") at 12, 44, 52, 54, 58-59, 115, 195.[1]

      Administrative Law Judge ("ALJ") Larry C. Marcy found that Plaintiff has the residual functional capacity to perform "light work that includes having convenient access to a rest room and no concentrated exposure to smoke, dust, and fumes." *Id.* at 14. He then denied benefits at Step 5 under the framework of Medical-Vocational Rule 202.14, without the assistance of a

---

[1] Her disability report suggests that she worked continuously throughout this almost twenty-year period. *See Record* at 58. Her attorney and earnings records indicate that she did not work continuously. *See id.* at 51-53; *Doc. 9* at 2.

vocational expert. *Id.* at 17; *see also id.* at 18. The Appeals Council declined review on June 22, 2005, thereby rendering the ALJ's decision final. *Id.* at 4.

This matter is before the court on Plaintiff's motion to reverse or remand, where she contends that the ALJ committed two errors: not giving controlling weight to a treating physician opinion and relying on the grids without obtaining vocational expert testimony. *See Docs. 8-9.* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment.

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and Plaintiff is not entitled to relief. *E.g., Grogan v. Barnhart,* 399 F.3d 1257, 1261-62 (10th Cir. 2005); *Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart,* 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir. 2003).[2] My assessment is based on a "meticulous" review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency. *Hamlin,* 365 F.3d at 1214; *see also Langley,* 373 F.3d at 1118.

The entire record has been read and carefully considered. The issues are straightforward, as are the ALJ's decision and the parties' briefs. Therefore, I confine my recitation of the facts to those necessary to my disposition. I agree with Plaintiff on both counts and remand the matter to the Commissioner for further proceedings.

---

[2] "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118 (internal quotations and citations omitted); *see also Hamlin,* 365 F.3d at 1214; *Doyal,* 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record of if there is a mere scintilla of evidence supporting it." *Langley,* 373 F.3d at 1118 (internal quotations and citations omitted); *see also Hamlin,* 365 F.3d at 1214.

2

The "grids" issue alone warrants reversal and remand.  ALJ Marcy found that Plaintiff's "testimony and subjective allegations in the record [were] generally credible, but not to the exten[t] alleged." *Record* at 16.  He determined that as a result of COPD, Plaintiff "sometimes has to gasp for air and uses an inhaler," and that she is therefore limited to work that has "no concentrated exposure to smoke, dust, and fumes." *See id.* at 17.[3]

He also credited Fitzpatrick's testimony about continence.  She testified was that she needs to use the restroom every thirty minutes.  *See id.* at 197.  The ALJ characterized her testimony as a need to "urinate frequently and . . . to wear Depends." *Id.* at 16.  He therefore determined that Plaintiff's limitations also include "convenient access to a rest room." *Id.* at 17. He did not, however, define whether he equated Plaintiff's asserted degree of "frequency" with "convenient access" or whether he was contemplating a less frequent need for restroom breaks.[4]

---

[3]  The ALJ's questioning of Plaintiff about her COPD included:

> Q: Has it gotten better or worse over the time?
> A: Worse, sometimes I do just gasp, trying to get – trying to breathe.
> Q: How are you treated for this condition?
> A: I just have the inhaler, the Combivent.
> Q: Okay.
> A: And I'm not on oxygen yet.
> Q: Okay.
> A: He checks my – I had pneumonia last year, I was real bad then, like no breath.
> Q: And how are – what's the major symptom you get as a result of your COPD?
> A: It's shortness of breath.  Any – if I exert myself at all, I mean just to you know a bed, you know, just any – not really walking up steps, but just a few steps.  Just any kind of little exertion and I can be out of breath.

*Record* at 199-200.

[4]  Plaintiff's treating physician, Dr. Orrin McLeod, executed a questionnaire that indicated Plaintiff could sit for about six hours a day with "normal breaks."  ALJ Marcy mischaracterized this finding as two-hour sitting restriction.  McLeod's two-hour restriction applied to standing, not sitting. In

The grids: "help evaluate whether there exist sufficient jobs that can be performed given the claimant's age, education, and physical limitations[;] are a shortcut that eliminate the need for calling in vocational experts [; and] set forth presumptions regarding whether jobs exist in significant numbers in the national economy given the particular limitations possessed by the claimant." *Trimiar v. Sullivan,* 966 F.2d 1326, 1332 (10th Cir. 1992) (internal quotations and citations omitted). A nonexertional impairment can reduce the occupational base reflected by the applicable grid and, therefore, when nonexertional impairments are present, the ALJ is required to make a finding whether their presence significantly reduces the job base. *See id.* If the extent of erosion of the job base is unclear, or there is no evidence to support a finding in the record, the ALJ must consult a vocational expert. *See, e.g., Thompson v. Sullivan,* 987 F.2d 1482, 1492 (10th Cir. 1993); *Talbot v. Heckler,* 814 F.2d 1456, 1460-65 (10th Cir. 1987).

Several unpublished Tenth Circuit cases flatly hold that environmental restrictions preclude reliance on the grids.[5] Moreover, a relatively recent Tenth Circuit decision that reversed

---

any event, ALJ Marcy evidently rejected McLeod's questionnaire entirely, so there is no basis to conclude that the ALJ's notion of "convenience" meant simply "normal breaks" or, indeed, what "normal breaks" entail. *See Record* at 16, 190.

[5] *See Wiles v. Apfel,* 1999 WL 14053 at *4 n.5 (10th Cir. 1999) ("We also note that Dr. Strom identified a number of environmental restrictions on Mr. Wiles' ability to work that would preclude reliance on the grids."); *Cox v. Apfel,* 1998 WL 864118 at *2 (10th Cir. 1998) ("We are persuaded by plaintiff's claims of error. . . . In this case, the ALJ's specific findings that plaintiff must avoid respiratory irritants and cannot stand or walk for long periods precluded his conclusive reliance on the grids. . . . The agency has provided no authority to support its argument that this court should take notice that an environmental restriction to avoid respiratory irritants does not significantly erode plaintiff's occupational base. We therefore decline to reach such a conclusion."); *Vansickle v. Sullivan,* 1992 WL 372605 at *3 (10th Cir. 1992) ("Here, the ALJ specifically found that claimant suffers from two nonexertional impairments: postural limitations, including the inability to repetitively bend, stoop or squat; and environmental restrictions, including the inability to work around respiratory irritants. . . . Although a vocational expert testified at the hearing, the ALJ failed to question such expert as to the percentage of sedentary jobs which could accommodate claimant's nonexertional limitations. . . . Because the record contains no information whether claimant's nonexertional impairments significantly limit the range of jobs available to him, the ALJ

a decision of this district emphasized that the ALJ himself must provide supported reasons for concluding the job base was not eroded. In that case the ALJ had in fact called a vocational expert to testify. The Tenth Circuit observed that if the claimant's nonexertional impairments prevents him or her

> from performing a full range of work at a given exertional level, the grids may be used only as a guide, and the Commissioner must prove through expert vocational testimony that jobs exist in the national economy which the claimant can perform.
>
> * * * * *
>
> Admittedly, the grids may be used to direct a conclusion if the claimant's nonexertional impairments do not significantly reduce the underlying job base. . . . "The ALJ, however, must back such a finding of negligible effect with the evidence to substantiate it." . . . We find insubstantial support in the record for the ALJ's determination of that finding, however. ***The ALJ's conclusion that claimant could perform most light work jobs was not supported by the VE's testimony or any other source. Accordingly, we remand the case for the limited purpose of obtaining vocational expert testimony or other additional evidence of the effect of the identified nonexertional limitations on claimant's ability to do substantially the full range of light work.***

*Lopez v. Barnhart,* 78 Fed. Appx. 675, 678 (10th Cir. 2003) (emphasis added).

ALJ Marcy's decision does not address the continence limitation in light of the requirements for light work. Nor does he consider the combined effect of environmental and continence limitations on the job base. He simply concluded that Plaintiff's limitations "do not allow her to perform the full range of light work" and that "there are a significant number of jobs in the national economy." He cites no evidence or reasoning; his assertion that sufficient jobs exist is the <u>only</u> basis for his decision. The Rulings that mention environmental limitations do not

---

erred in applying the grids conclusively to determine that claimant is not disabled.").

conclusively establish that such limitations will never erode the job base and none address the continence issue.   To the contrary, for the situation here, the Rulings call for the use of a vocational expert.

For example, the only regulation I have found that addresses environmental conditions applies to the grids for the heavy exertional category, which is not applicable here.  *See* 20 C.F.R., Pt. 404, Subpt. P. App. 2, § 204.00.  The Commissioner cites Social Security Ruling 85-15 for the proposition that the environmental limitations do not significantly impact the job base, but that Ruling does not supply the findings the ALJ should have made.  First and foremost, ALJ Marcy did not rely on this or any other ruling.  Second, as the Commissioner notes, Ruling 85-15 states "[w]here a person has a medical restriction to avoid *excessive* amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc."  *Social Security Ruling 85-15,* 1985 WL 56857 at *8 (emphasis added).  But the Ruling continues:

> Where an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions.
>
> ***Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a VS*** [vocational specialist].

*Id.* (emphasis added).  ALJ Marcy's opinion used the word "concentrated," and that word is not necessarily synonymous with "excessive."  In performing my review, I cannot supply the necessary finding that the two words either would or would not have been used in exactly the same way by ALJ Marcy.

The Commissioner also defends the ALJ's finding by simply asserting that most light jobs in fact have convenient access to restrooms.  She does not cite a regulation, ruling or other authority in this regard, however, and I have found none.  *See Doc. 11* at 5.  Social Security Ruling 83-14 states that "[e]nvironmental restrictions, such as the need to avoid exposure to feathers, would also not significantly affect the potential unskilled light occupational base" but, like Ruling 85-15, goes on to say that "[w]here nonexertional limitations or restrictions within the light work category are between the examples [discussed in the ruling], a decisionmaker will often require the assistance of a [vocational specialist.]."  *Social Security Ruling 83-14,* 1983 WL 31254 at *5.  None of the examples discussed in Ruling 83-14 include continence issues, so by definition Plaintiff's two limitations fall  "between the examples."

Moreover, Ruling 83-14 further states that:

> The major difference between sedentary and light work is that most light jobs – particularly those at the unskilled level of complexity – require a person to be standing or walking ***most of the workday***. Another important difference is that the frequent lifting or carrying of objects weighing up to 10 pounds (which is required for the full range of light work) implies that the worker is able to do occasional bending of the stooping type; *i.e.*, for no more than ***one-third of the workday*** to bend the body downward and forward by bending the spine at the waist.

*Id.* at *4; *see also* 20 C.F.R. § 404.1567(b) ("Light work . . . requires a good deal of walking or standing, or when it involves sitting most of the time. . . .  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as . . . inability to sit for long periods of time.").  It would appear, then, that Plaintiff's continence limitations are directly relevant to the basic requirements for light work, because that limitation affects her ability to perform sustained work throughout the day.

7

I therefore find that the ALJ's bare conclusion that significant jobs exist does not satisfy the Commissioner's burden at Step 5. Accordingly, I find the matter should be remanded to the Commissioner on this basis alone.

I further find the treating physician issue should be remanded as well. Plaintiff's treating physician, Dr. McLeod, executed a "Medical Assessment of Ability to do Work-Related Activities (Physical).[6] Among other things, Dr. McLeod indicated that Plaintiff's back pain prevented her from performing the lifting and standing and walking requirements for light work. *See Record* at 190; *see also* 20 C.F.R. § 404.1567(b). ALJ Marcy considered the form and plainly did not credit it, but he did not discuss the two-step sequential analysis set forth in Tenth Circuit opinions. It is not entirely from the ALJ's decision what weight he did give to Dr. McLeod's opinion or his reasons for rejecting Dr McLeod's conclusions. *See, e.g., Hackett v. Barnhart,* 395 F.3d 1168, 1173-74 (10th Cir. 2005); *Robinson v. Barnhart,* 266 F.3d 1078, 1082-83 (10th Cir. 2004).

To affirm ALJ March's rejection of Dr. McLeod's limitations from the way he wrote his opinion, I would have to tread perilously close to "supplying possible reasons for giving less weight or rejecting the treating physician opinion," a "*post hoc* effort to salvage the ALJ's decision" that would be error on my part. *Robinson,* 266 F.3d at 1084. In light of the necessity to remand on the grids issue, the ALJ should also clarify and better explicate his analysis and reasoning regarding Dr. McLeod's opinion.

Wherefore,

---

[6] This form does not bear a Social Security form number, and it is unclear from the record who created the form.

**IT IS HEREBY ORDERED** that Plaintiff's motion *(Doc. 8)* is GRANTED and the matter is remanded to the Commissioner for further proceedings. A final order will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.